UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOM SCOCCA, *et al.*,

    Plaintiffs,

    v.

SHERIFF LAURIE SMITH, *et al.*,

    Defendants.
_____/

No. C-11-1318 EMC

**ORDER STAYING CASE**

Previously, the Court issued an order to show cause, asking the parties to address whether this case should be stayed to await the Ninth Circuit's en banc hearing and decision in *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011), *rehearing en banc granted*, No. 07-15763, 2011 U.S. App. LEXIS 23703 (9th Cir. Nov. 28, 2011). Having reviewed the parties' briefs, the Court concludes that a stay is appropriate. Accordingly, the Court stays the case through the date of the next case management conference which the Court now sets for August 24, 2012 at 10:30 a.m.

**I. DISCUSSION**

A court has discretion in determining whether a stay is proper in light of proceedings in another case. *See Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000). In assessing the propriety of a stay, a court must "balance the length of the stay against the strength of the justification given for it." *See id.* More specifically,

> [w]here it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go

> forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. State of Cal.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id.* (internal quotation marks omitted); *see also Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (noting that, "[g]enerally, stays should not be indefinite in nature").

A. <u>Length of Stay</u>

In the instant case, neither Plaintiffs nor Defendants have addressed the length of any potential stay. For example, neither party has briefed how long the en banc process typically takes. The Court takes judicial notice of the fact that, in the Ninth Circuit, it takes approximately 16.3 months for a case to resolved by the appellate court after the notice of appeal has been filed. *See* Judicial Business 2010, Table B-4, *available at* http://www.uscourts.gov/Statistics/JudicialBusiness/JudicialBusiness2010.aspx (last visited Feb. 10, 2012). Presumably, the en banc process will take less time. In any event, the Court will reassess the stay at the next case management conference six months from now.

B. <u>Judicial Economy</u>

In its order to show cause, the Court identified how judicial economy would be promoted if a stay were implemented. First, the en banc panel in *Nordyke* might agree with the three-judge panel that equal protection claims predicated on a violation of the Second Amendment should be analyzed directly under the Second Amendment and not under the equal protection clause, because the Second Amendment provides an explicit textual source of constitutional protection. Second, regardless of how the en banc panel rules on that issue, it will likely opine on the appropriate standard by which to evaluate gun-control regulations – *e.g.*, whether all such regulations are subject to strict scrutiny or whether only those regulations that substantially burden the right to keep and bear arms in self-defense would be subject to heightened security.

In their brief, Plaintiffs suggest that judicial economy would not be promoted through a stay. More specifically, Plaintiffs argue that there is no reason to delay discovery because some form of

2

heightened scrutiny will apply to their equal protection claim – not rational review – and therefore the parties and the Court must look at actual evidence – not just any conceivable basis – to resolve their constitutional claim. *Compare Heller v. Doe*, 509 U.S. 312, 320 (1993) (stating that "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification" and that "[a] statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it'").

There are at least two problems with this argument. First, it does not take into account that the en banc panel in *Nordyke* might dispose of the equal protection claim for the same reason as the three-judge panel. If so, no discovery would be needed because Plaintiffs have specifically disavowed that they are bringing any Second Amendment claim. Second, as Defendants point out, Plaintiffs assume that some form of heightened scrutiny will apply to their claim; however, if the en banc panel agrees with the three-judge panel, there will be heightened scrutiny only if Plaintiffs can establish that their right to keep and bear arms in self-defense has been substantially burdened. In short, the legal standard adopted by the en banc panel will likely affect the scope and focus of discovery. For instance, if all gun-control regulations are subject to strict scrutiny, then the parties will likely focus on how effective the regulation is with respect to reducing gun crime. *See Nordyke*, 644 F.3d at 784-85 (noting, *inter alia*, that "courts cannot determine whether a gun-control regulation is narrowly tailored to the prevention of crime without deciding whether the regulation is likely to be effective") (emphasis omitted). In contrast, if only regulations that substantially burden the right to keep and bear arms are subject to heightened scrutiny, then the parties may focus instead on whether the regulation "leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes." *Id.* at 787.

This is not to say that the Court would not entertain a stay that permitted the parties to take some narrowly tailored discovery. But Plaintiffs have not identified what discovery would be needed regardless of the standard applied, nor have they suggested that certain discovery must be taken immediately (*e.g.*, third-party discovery that could not be subject to a preservation order).

///

///

3

C. <u>Hardships to Parties</u>

In their brief, Defendants have not identified any hardship or inequity that they might suffer in the absence of a stay. To the extent Defendants suggest that they would be subjected to potentially needless discovery, that is not the kind of hardship contemplated by the case law. *See, e.g.*, *Dependable Highway*, 498 F.3d at 1066 (stating that "being required to defend a suit [if the stay is vacated], does not constitute a clear case of hardship or inequity") (internal quotation marks omitted).

Nevertheless, Defendants' failure to establish hardship of their own is not dispositive. "Such a showing need by made by the party seeking the stay only if the party opposing the stay first demonstrates that there is a 'fair possibility' that a stay will cause it injury." *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2008 U.S. Dist. LEXIS 109241, at *6 (N.D. Cal. Sept. 8, 2008); *see also Dependable Highway*, 498 F.3d at 1066 (stating that, "if there is even a fair possibility that [a] stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity") (internal quotation marks omitted).

In the instant case, the Court focuses on the hardship to Mr. Scocca and not Madison Society, Inc. ("MS") and Calguns Foundation, Inc. ("CGF"). This is because the Court has serious concerns about each organization's standing to assert an equal protection claim. For example, it is debatable whether CGF's one-time attendance at a prelitigation meeting, *see* Opp'n at 12 (noting that "Paragraph 33 of the complaint plainly points out that Gene Hoffman, Officer/Director of CGF attended the pre-litigation meeting in an attempt to keep the case out of court"), is enough to constitute a drain on its resources such that it would have direct standing to bring suit. *See Fair Housing Council v. Roommate.com*, Nos. 09-55272, 09-55875, 09-55969, 2012 U.S. App. LEXIS, at *4 (9th Cir. Feb. 2, 2012) (noting that there must be a drain on the organization's resources from both a diversion of its resources and frustration of its mission and that "standing must be established independent of the lawsuit filed by the plaintiff") (internal quotation marks omitted). As for associational standing, an organization must show, *inter alia*, that "its members would otherwise have standing to sue in their own right." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *see also AlohaCare v. Hawaii*, 572 F.3d 740, 747 (9th Cir. 2009) (stating the

4

same). Here, neither MS nor CGF has made any allegation in the complaint that their members would have standing to sue in their own right. Furthermore, in their response to the order to show cause, the organizations indicate that they "re prepared to have some of their individual members seek new licenses." Pls.' Resp. at 6. This suggests that, at present, none of their members has standing.

Although the Court specifically instructed Plaintiffs to focus on the possible harm, if any, to Mr. Scocca that could result from a stay, *see* Docket No. 31 (Order at 2), Plaintiffs have done little to establish hardship. No declaration was submitted by Mr. Scocca. As for the complaint, it simply states that "[p]art of [Mr. Scocca's] investigative duties requires him to conduct surveillance of suspicious activity . . . which becomes of marginal utility if he is required to openly carry his firearm in connection with his work." Compl. ¶ 31(e). This statement does not seem to implicate the need of Mr. Scocca to carry a concealed weapon in order to defend himself. Nor does this statement indicate that, without a license to carry a concealed weapon, Mr. Scocca would suffer financial harm. Rather, the statement simply suggests that Mr. Scocca would prefer to carry a concealed weapon in order to conduct his work more effectively.

In the response to the order to show cause, Plaintiffs seem to claim hardship to Mr. Scocca based on a new state law that bars members of the public from carrying unloaded handguns in public anymore. *See* Pls.' Resp. at 8. But even with this new law, it is not clear how a stay here would subject Mr. Scocca to an undue hardship, especially because he has a license to openly carry a loaded firearm during the course and scope of his business. *See* Compl. ¶ 31(b). At issue here is Mr. Scocca's desire to carry a *concealed* weapon.

D.  Summary

Taking into account all of the above, the Court concludes that a limited stay of proceedings is appropriate. In reaching this ruling, the Court also takes into consideration that the Ninth Circuit as well as district courts within the Ninth Circuit have stayed cases involving gun-control regulations precisely because of *Nordyke*. Plaintiffs acknowledge these cases but contend that they are procedurally distinguishable from the case at bar because, in those cases, the factual records are

1 already complete.[1] According to Plaintiffs, a stay would make sense in this case only after discovery
2 is finished. *See* Pls.' Resp. at 5. While the Court is not entirely unsympathetic to Plaintiffs' desire
3 to proceed with discovery, the Ninth Circuit's ruling in *Nordyke* will likely inform the scope of
4 discovery. *See Lockyer*, 398 F.3d at 1110 (asking whether a stay might promote "the orderly course
5 of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law
6 which could be expected to result from a stay").

Finally, to the extent Plaintiffs now argue that Defendants are violating California law by stopping the issuance of licenses to carry concealed weapons, *see* Pls.' Resp. at 7 (citing *Salute v. Pitchess*, 61 Cal. App. 3d 557 (1976)), the Court does see how that argument has any real impact on this case and on Mr. Scocca's claim in particular.

## II. CONCLUSION

For the foregoing reasons, the Court shall stay proceedings in this case. More specifically, the Court shall stay proceedings until August 24, 2012. On that day, the Court shall hold a case management conference at 10:30 a.m. At that time, the Court shall discuss with the parties whether the stay should be continued, that is, assuming that no decision has yet issued in *Nordyke*. If the Ninth Circuit does issue a decision in *Nordyke* prior to the case management conference, then the parties may jointly file a request asking that the date of the case management conference be advanced.

The Court defers ruling on Defendants' motion to dismiss, *see* Docket No. 9 (motion), pending the stay.

IT IS SO ORDERED.

Dated: February 14, 2012

_____
EDWARD M. CHEN
United States District Judge

---

[1] The cases cited by Defendants are also distinguishable because, there, the parties jointly moved or stipulated to a stay.