UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM SCOCCA, *et al.*, | No. C-11-1318 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| SHERIFF LAURIE SMITH, *et al.*, | **(Docket No. 9)** |
| Defendants. | |
| _____/ | |

Plaintiffs in this case are Tom Scocca, Madison Society, Inc. ("MS"), and Calguns Foundation, Inc. ("CGF"). They have filed suit against Defendants the County of Santa Clara and its sheriff, Laurie Smith, both in her official and individual capacity. According to Plaintiffs, Defendants have violated their rights to equal protection in the way they have administered California Penal Code § 12050, which provides, in relevant part, that a sheriff of a county may issue to a person a license to carry a concealed weapon upon proof that, *inter alia*, "the person applying is of good moral character [and] that good cause exists for the issuance." Cal. Pen. Code § 12050(a)(1)(A). In both their complaint and their briefs, Plaintiffs emphasize that they are not bringing a Second Amendment claim and instead are asserting only an equal protection claim.

Currently pending before the Court is Defendants' motion to dismiss. In February 2012, the Court deferred ruling on the motion to dismiss to await the Ninth Circuit's en banc decision in *Nordyke v. King*, No. 07-15763, 2012 U.S. App. LEXIS 11076 (9th Cir. June 1, 2012). That decision having been issued, the Court now rules on the motion to dismiss on the merits. For the

**United States District Court**
For the Northern District of California

1   reasons discussed below, the Court **GRANTS** the motion to dismiss but gives Plaintiffs leave to

2   amend.

### I.   FACTUAL & PROCEDURAL BACKGROUND

4          As noted above, Plaintiffs in this action are Mr. Scocca and two organizations, MS and CGF.

5   As alleged in the complaint, Mr. Scocca was, at all material times, a resident of Santa Clara County.

6   *See* Compl. ¶ 4.  MS "is a membership organization whose purpose is preserving and protecting the

7   legal and constitutional right to keep and bear arms for its members and all responsible law-abiding

8   citizens." *Id.* ¶ 5.  CGF is a nonprofit organization whose purposes "include supporting the

9   California firearms community by promoting education for all stakeholders about California and

10  federal firearms laws, rights[,] and privileges, and defending and protecting the civil rights of

11  California gun owners." *Id.* ¶ 6.

12         Defendants in the case are the County of Santa Clara and Sheriff Smith.  Under California

13  Penal Code § 12050, Sheriff Smith may issue to a person a license to carry a concealed weapon

14  upon proof that, *inter alia*, "the person applying is of good moral character [and] that good cause

15  exists for the issuance." Cal. Pen. Code § 12050(a)(1)(A).  According to Plaintiffs, pursuant to §

16  12050, Sheriff Smith has issued more than seventy concealed carry weapon permits to Santa Clara

17  County residents.  *See* Compl. ¶ 24.

18         Plaintiffs allege that, in November 2008, Mr. Scocca sent a letter of inquiry to Sheriff Smith

19  asking for information about the process to obtain a concealed carry weapon permit.  The sheriff

20  apparently considered the letter of inquiry an application and denied the application for lack of

21  supporting documentation.  *See id.* ¶ 25.  In December 2008, Mr. Scocca sent a formal application

22  for a permit to Sheriff Smith.  *See id.* ¶ 26.  After failing to get a response, Mr. Scocca sent a letter in

23  April 2009, requesting action on the application and/or an appeal.  *See id.* ¶ 27.  Sheriff Smith

24  denied the appeal on April 14, 2009.  *See id.* ¶ 28.

25         According to Plaintiffs, Mr. Scocca should have been issued a permit because he possesses

26  good moral character, as required by § 12050, and because he has good cause for the issuance, as

27  required by the statute.  More specifically, he has need to carry a concealed weapon because "he is

28  the Director of Security Risk Management at a large semiconductor equipment manufacturer" and,

**United States District Court**

For the Northern District of California

1   even though he has a license "to openly carry a loaded firearm during the course and scope of his

2   business," "part of his investigative duties requires [him] to conduct surveillance of suspicious

3   activity – which becomes of marginal utility if he is required to openly carry his firearm in

4   connection with his work." *Id.* ¶ 31.  Plaintiffs further assert that Sheriff Smith improperly denied

5   Mr. Scocca's application because his good moral character is "functionally equivalent" to that of the

6   seventy persons whom the sheriff has licensed, *id.* ¶ 30, and his good cause is also "functionally

7   equivalent" to that of the seventy persons whom the sheriff has licensed." *Id.* ¶ 32.

8          Based on the above, Plaintiffs appear to have asserted the following claims against

9   Defendants: (1) violation of 42 U.S.C. § 1983 based on the federal equal protection clause; (2)

10  violation of the California Constitution based on the state equal protection clause, *see* Cal. Const.,

11  art. I, § 7; and (3) violation of California Civil Code § 52.3.

## II.   DISCUSSION

13  A.     Legal Standard

14         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

15  failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

16  dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

17  *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

18  must take all allegations of material fact as true and construe them in the light most favorable to the

19  nonmoving party, although "conclusory allegations of law and unwarranted inferences are

20  insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

21  2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

22  facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when

23  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

24  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

25  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to

26  a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

27  unlawfully." *Iqbal*, 129 S. Ct. at 1949.

28

B.     Standing of MS and CGF

Defendants contend that the claims brought by the two organizations – MS and CGF – should be dismissed because the organizations have failed to include allegations establishing that they have standing to sue.  More specifically, Defendants assert that the organizations have neither direct standing nor associational standing (*i.e.*, standing to bring suit on behalf of their members).

1.     Direct Standing

To establish direct standing, a plaintiff must show "(1) injury in fact; (2) causation; and (3) redressability."  *La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  This is the test to be applied regardless of whether the plaintiff is an individual or an organization.  *See id.*

On the first element, the Ninth Circuit has noted that

> [a]n organization suing on its own behalf can establish an injury when it suffered "both a diversion of its resources and a frustration of its mission."  It cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.  It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem.

*Id.*  The Ninth Circuit has further emphasized that "[a]n organization may sue only if it was forced to choose between suffering an injury and diverting resources to counteract the injury" – *i.e.*, an organization does *not* have "standing to sue based solely on its own decision regarding resources allocation" but rather must "be forced to divert resources in order to avoid an injury caused by defendant's conduct."  *Id.* at 1088 n.4.

As Defendants argue, MS and CGF have failed to make any allegations of injury in the complaint.  CGF asserts that it, at least, has suffered an injury because of a diversion of resources: "Paragraph 33 of the complaint plainly points out that Gene Hoffman, Officer/Director of CGF attended the pre-litigation meeting in an attempt to keep the case out of court."  Opp'n at 12; *see also* Compl. ¶ 33 (alleging that, in October 2010, Mr. Scocca sent a letter to the sheriff, advising of changes in Second Amendment law and asking for an interview; also alleging that the meeting ultimately took place in December 2010 and was attended by multiple persons, including Mr. Hoffman).  But there is nothing to indicate that Mr. Hoffman's presence at the meeting was anything

1   other than a CGF decision regarding resources allocation.  There are no allegations suggesting that

2   CGF was forced to choose between suffering an injury and diverting resources – *i.e.*, sending Mr.

3   Hoffman to the meeting – to counteract the injury.  Furthermore, GCF has not cited any authority

4   establishing that a one-time attendance at a prelitigation meeting is enough to constitute a diversion

5   of resources.  As noted above, a party is not permitted to manufacture injury by incurring litigation

6   costs.

7          2.      Associational Standing

8          "[A]n association has standing to bring suit on behalf of its members when: (a) its members

9   would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

10  germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested

11  requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple*

12  *Advertising Comm'n*, 432 U.S. 333, 343 (1977); *see also AlohaCare v. Hawaii*, 572 F.3d 740, 747

13  (9th Cir. 2009) (stating the same).

14         As Defendants argue in their brief, neither MS nor CGF has made any allegation in the

15  complaint that their members would have standing to sue in their own right.  (Neither organization

16  has claimed, *e.g.*, that Mr. Scocca is a member.)  The organizations fail to address this deficiency in

17  their opposition brief.  The fact that the organizations have "members who own, shoot, collect, buy

18  and sell firearms" does not mean that the members have, *e.g.*, suffered any injury as a result of

19  Defendants' actions.

20         Because MS and CGF have failed to adequately allege either direct or associational standing,

21  the Court grants Defendants' motion to dismiss the claims as asserted by the organizations.  The

22  dismissal shall be without prejudice.  Of course, even though neither MS nor CGF has standing to

23  assert any claims, there is no dispute that Mr. Scocca has standing, and therefore, the Court must

24  address the substantive claims asserted in the complaint which are, as noted above, a claim for

25  violation of § 1983, a claim for violation of the California Constitution, and a claim for violation of

26  California Civil Code § 52.3.

27  ///

28  ///

**United States District Court**
For the Northern District of California

5

United States District Court
For the Northern District of California

C.      Section 1983 Claim

      1.      Second Amendment v. Equal Protection

In both the complaint and the opposition brief, Mr. Scocca emphasizes that his § 1983 claim is based on an alleged violation of the federal equal protection clause, and not the Second Amendment.  That is, he is not arguing that § 12050 is unconstitutional in violation of the Second Amendment because it requires a person to obtain a permit before he or she can carry a concealed weapon.  *See* Compl. ¶ 2.  Rather, he is asserting that Sheriff Smith has administered § 12050 in an arbitrary and capricious way in violation of the equal protection clause.  *See* Compl. ¶ 23.

In their reply brief, Defendants argue that, even if Mr. Scocca wants to restrict his claim to one under equal protection, it must still be construed as a Second Amendment claim under Ninth Circuit case law, more specifically, *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) (acknowledging that "the right to keep and to bear arms for self-defense is a fundamental right" but concluding that "that right is more appropriately analyzed under the Second Amendment").  The panel decision in *Nordyke*, however, was vacated and the en banc decision that issued did not make any such conclusions.  Rather, the en banc court concluded that the equal protection claim failed on the merits – because, *inter alia*, there was no violation of a fundamental right and therefore rational basis scrutiny applied which was easily satisfied.  *See Nordyke*, 2012 U.S. App. LEXIS 11076, at *2-3 n.1.

Moreover, contrary to what Defendants suggest, it is far from clear that all equal protection claims should be construed as Second Amendment claims simply because they relate to the right to keep and bear arms.  Indeed, as Mr. Scocca points out, both the Ninth Circuit and district courts within the circuit have recognized the viability of an equal protection claim when the administration of a statute related to the carrying of weapons is being challenged.  *See, e.g.*, *Guillory v. County of Orange*, 731 F.2d 1379, 1383 (9th Cir. 1984) (holding that plaintiffs' "claim [that] they were denied equal protection of the laws by the alleged arbitrary and capricious handling of their applications" for concealed weapon permits should have been tried before the jury); *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1118 (S.D. Cal. 2010) (stating that "[a] concealed weapons licensing program administered so as to unjustly discriminate between persons in similar circumstances may

United States District Court

For the Northern District of California

deny equal protection"); *March v. Rupf*, No. C 00-03360 WHA, 2001 U.S. Dist. LEXIS 14708, at *13 (N.D. Cal. Sept. 17, 2011) (stating the same). In the instant case, Mr. Scocca is contesting the way that the sheriff has administered § 12050 – more specifically, by treating similarly situated persons differently. Thus, consistent with *Guillory* and its progeny, such a claim should be allowed to proceed as an equal protection claim.

        2.   <u>Equal Protection</u>

     Defendants argue that, even if the § 1983 claim is construed as an equal protection claim, it still should be dismissed because (1) Mr. Scocca has simply stated in conclusory terms that he  is similarly situated with the seventy persons who have been licensed ("functionally equivalent" in terms of good moral character and good cause) and (2) even if he were similarly situated, he has failed to include any allegations indicating that the sheriff's denial of his application to carry a concealed weapon was without a rational basis.

        a.   <u>Similarly Situated</u>

     With respect to Defendants' first argument, the Court begins by noting that, in other contexts, it is debatable whether a plaintiff must provide specifics as to *how* he or she is similarly situated to the favored third parties. For example, in *Marziano v. County of Marin*, No. C-10-2740 EMC, 2010 U.S. Dist. LEXIS 109595 (N.D. Cal. Oct. 4, 2010), an employment discrimination case, this Court held that, under *Twombly* and *Iqbal*, "a general statement that similarly situated employees were treated more favorably . . . with respect to a specific employment action is . . . enough" to survive a motion to dismiss. *Id.* at *28. The Court rejected the position adopted by other courts that specific allegations addressing *how* the employees were similarly situated were necessary. *See id.*

     But, here, there is a strong argument for specificity. While there is a plausible argument that employees are similarly situated by virtue of the fact that they are employees, the fact that Mr. Scocca and the favored third parties were all applicants for licenses is not enough to give rise to an inference that they are similarly situated.

///

///

1    Moreover, it is significant that Mr. Scocca essentially asserts a class-of-one equal protection

2    claim.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that, in a class-of-one

3    claim, the plaintiff is "intentionally treated differently from others similarly situated and . . . there is

4    no rational basis for the difference in treatment").  Where a plaintiff is making a class-of-one claim,

5    the essence of the claim is that only the plaintiff has been discriminated against, and therefore the

6    basis for the differential treatment might well have been because the plaintiff was unique; thus, there

7    is a higher premium for a plaintiff to identify how he or she is similarly situated to others.  As the

8    Second Circuit noted in *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010),

9    "[c]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and

10   the persons to whom they compare themselves."  *Id.* at 59.  Several courts have indicated that there

11   needs to be specificity in a class-of-one case.[1]

12   Finally, Mr. Scocca's blanket assertion that he and the favored third parties are similarly

13   situated is questionable because the criteria for granting a permit are subjective and qualitative in

14   nature (*i.e.*, good moral character and good cause).  As the court noted in *Kansas Penn Gaming, LLC*

15   *v. Collins*, No. 10-3002, 2011 U.S. App. LEXIS 18187 (10th Cir. Sept. 1, 2011), a class-of-one

16   equal protection case, cursory allegations on being similarly situated are especially problematic

17   where, *e.g.*, "inherently subjective and individualized enforcement of health and safety regulations"

18   are at issue, in contrast to *Olech* where "the regulatory decision [was] a simple, one-dimensional

19   inquiry, resolved with a tape measure."  *Id.* at *25.

---

21   [1] *See, e.g.*, *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 683 (6th Cir. 2011) (in
     class-of-one case, stating that, "[a]lthough plaintiffs conclusorily allege that Minard is similarly
22   situated, exhibits attached to their complaint substantiate undisputed and facially legitimate reasons
     for the state defendants' complained-of actions in regulating plaintiffs' compost operation at 32 Mile
23   Road – reasons that appear to be unique to that property"); *Perano v. Township of Tilden*, 423 Fed.
     Appx. 234, 238-39 (3d Cir. 2011) (in class-of-one case, stating that allegation that "[plaintiff] was
24   treated differently from 'other similarly situated residential and commercial developers'" was not
     enough; "[w]ithout more specific factual allegations as to the allegedly similarly situated parties, he
25   has not made plausible the conclusion that those parties exist and that they are like him in all
     relevant aspects"); *Smith v. Kimbhal*, 421 Fed. Appx. 377, 379 (5th Cir. 2011) (in class-of-one case,
26   stating that "[plaintiff] has provided insufficient information from which this or any other court
     could ascertain whether he is 'similarly situated' to these other prisoners" because, even though
27   "[plaintiff] does compare his behavior in prison with other prisoners, he has not provided any
     information about the sentences the other prisoners received for their crimes, the circumstances
28   surrounding their offenses, or the information considered by the Board when determining whether to
     release a prisoner on parole").

**United States District Court**
For the Northern District of California

1    Accordingly, Mr. Scocca has failed to state a plausible equal protection claim because he has

2    simply stated in conclusory terms that he  is similarly situated with the seventy persons who have

3    been licensed.

4            b.    <u>Rational Review v. Heightened Scrutiny</u>

5    Defendants also argue that, even if there were sufficient allegations on the similarly situated

6    requirement, dismissal of the equal protection claim would still be warranted because Mr. Scocca

7    has failed to include any allegations indicating that the sheriff's denial of his application to carry a

8    concealed weapon was without a rational basis.

9    In addressing this argument, the Court begins by noting that, where an equal protection claim

10   is based on membership in a suspect class such as race or the burdening of a fundamental right, then

11   heightened scrutiny is applied; otherwise only rational review applies.  *See Kahawaiolaa v. Norton*,

12   386 F.3d 1271, 1277-78 (9th Cir. 2005) (stating that, "[w]hen no suspect class is involved and no

13   fundamental right is burdened, we apply a rational basis test to determine the legitimacy of the

14   classifications").  Defendants argue that there is no suspect class at issue here (*i.e.*, gun owners are

15   not a protected class) and that no fundamental right has been burdened such that rational review is

16   applicable.  Mr. Scocca argues that a fundamental right has been burdened – *i.e.*, his Second

17   Amendment right to keep and bear arms.  Notably, at the hearing on the motion to dismiss, Mr.

18   Scocca expressly disavowed any argument based on rational review (*i.e.*, that even if no

19   fundamental right were involved, the sheriff's denial of his application to carry a concealed weapon

20   was without a rational basis).  Thus, if the allegations in the complaint do not establish that some

21   kind of heightened scrutiny should apply, Mr. Scocca has essentially admitted that he has no case.

22   The Court concludes that, based on the allegations in the complaint, Mr. Scocca has failed to

23   plead a plausible claim for relief.  Although the *Nordyke* panel decision is no longer binding

24   authority (in light of the en banc decision), the reasoning of the panel decision is still persuasive –

25   *i.e.*, that "heightened scrutiny does not apply unless a regulation substantially burdens the right to

26   keep and to bear arms for self-defense."  *Nordyke*, 644 F.3d at 783.  As the panel in *Nordyke*

27   explained, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court essentially

28   reasoned that, "because handguns are extremely useful for self-defense, the District's complete

United States District Court

For the Northern District of California

1  handgun ban *substantially burdened* the core right to armed self-defense, and was therefore

2  unconstitutional." *Nordyke*, 644 F.3d at 783 (emphasis added). This was in contrast to eighteenth-

3  century gunpowder storage laws where there was no burden. *See id.* Notably, the Second Circuit

4  recently adopted the same approach in *United States v. Decastro*, No. 10-3773, 2012 U.S. App.

5  LEXIS 11213 (2d Cir. June 1, 2012). The Second Circuit noted that, in *Heller*, the Supreme Court

6  "disclaim[ed] any reading that calls into question (among other things) 'laws forbidding the carrying

7  of firearms in sensitive places such as schools and government buildings, or laws imposing

8  conditions and qualifications on the commercial sale of arms,'" and added that the "natural

9  explanation" as to "why these two classes of restrictions would be permissible . . . is that time, place

10 and manner restrictions may not significantly impair the right to possess a firearm for self-defense,

11 and may impose *no appreciable burden* on Second Amendment rights." *Id.* at 13 (emphasis added).

12         While these cases involve a Second Amendment claim, not an equal protection claim, an

13 equal protection claim predicated on denial or burdening of a fundamental right does not lie unless

14 that right is substantially burdened. As the Supreme Court held in *Lyng v. International Union*, 485

15 U.S. 360 (1988), "[b]ecause the statute challenged here has *no substantial impact* on any

16 fundamental interest and does not 'affect with particularity any protected class,' we confine our

17 consideration to whether the statutory classification 'is rationally related to a legitimate

18 governmental interest.'" *Id.* at 370 (emphasis added). *See also Johnson v. Robison*, 415 U.S. 361,

19 375 n.14 (1974) (stating that, "since we hold . . . that the Act does not violate appellee's right of free

20 exercise of religion, we have no occasion to apply to the challenged classification a standard of

21 scrutiny stricter than the traditional rational-basis test"); *Green v. City of Tucson*, 340 F.3d 891, 896

22 (9th Cir. 2003) (stating that, "where the statute in question substantially burdens fundamental rights,

23 such as the right to vote, or where the statute employs distinctions based on certain suspect

24 classifications, such as race or national origin, strict scrutiny applies"); *Parsons v. County of Del

25 Norte*, 728 F.2d 1234, 1237 (9th Cir. 1984) (noting that "[o]nly when a government regulation

26 directly and substantially interferes with the fundamental incidents of marriage is such strict scrutiny

27 applicable").

28

United States District Court

For the Northern District of California

1    Here, Mr. Scocca has failed to adequately state a claim of substantial burden of Second

2    Amendment rights sufficient to trigger strict security under the equal protection clause.  Nowhere in

3    his complaint has he included any factual allegations explaining how his right to keep and bear arms

4    was substantially burdened as a result of Defendants' actions.  Indeed, as Defendants argue, at best

5    Mr. Scocca has simply alleged in his complaint that he would prefer to carry a concealed weapon in

6    order to conduct his work more effectively.  *See* Compl. ¶ 31(e) (alleging that "[p]art of [Mr.

7    Scocca's] investigative duties requires him to conduct surveillance of suspicious activity – which

8    becomes of marginal utility if he is required to openly carry his firearm in connection with his

9    work").  *Compare Decastro*, 2012 U.S. App. LEXIS 11213, at *20 (stating that "law that regulates

10   the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate

11   alternatives remain for law-abiding citizens to acquire a firearm for self-defense"); *Nordyke*, 644

12   F.3d at 787 (stating that, "when deciding whether a restriction on gun sales substantially burdens

13   Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with

14   reasonable alternative means for obtaining firearms sufficient for self-defense purposes").  Mr.

15   Scocca does not allege he has been barred from owning firearms as in, *e.g.*, *Heller* or *McDonald v.

16   City of Chicago*, 130 S. Ct. 3020 (2010).

17       The Court therefore holds, as an independent ground for dismissal, that Mr. Scocca has failed

18   to state a claim for relief because he has failed to adequately allege a substantial burden on his rights

19   as protected by the Second Amendment and thus only rational basis applies (as the complaint is

20   pled).  Mr. Scocca concedes he has no viable claim under rational basis review.

21   D.    <u>Equal Protection Claim Based on California Constitution</u>

22       Under the state equal protection clause, rational review is applicable unless a suspect class is

23   involved or a fundamental right is infringed.  *See In re Marriage Cases*, 43 Cal. 4th 757, 783 (2008).

24   This is the same as federal law.  However, under California law, there is no fundamental right to

25   bear and keep arms; "[t]he right to bear arms is *not* recognized as one of the rights enumerated in the

26   California Constitution."  *People v. Yarbrough*, 169 Cal. App. 4th 303, 312 n.3 (2008) (emphasis

27   added); *see also Kasler v. Lockyer*, 23 Cal.4th 472, 481 (2000) (stating that, "[i]f plaintiffs are

28   implying that a right to bear arms is one of the rights recognized in the California Constitution's

**United States District Court**

For the Northern District of California

1    declaration of rights, they are simply wrong"). Accordingly, the Court dismisses with prejudice Mr.

2    Scocca's equal protection claim based on the California Constitution. Mr. Scocca has invoked

3    heightened scrutiny based on a fundamental right alone. He has, as noted above, disavowed any

4    claim based on rational review.

5    E.    Claim Under California Civil Code § 52.3

6         Finally, Defendants challenge Mr. Scocca's claim for violation of California Civil Code §

7    52.3 (which Mr. Scocca has now narrowed to a claim for injunctive or declaratory relief, *see* Opp'n

8    at 10) on the basis that there is no private right of action under that statute. Section 52.3 provides as

9    follows:

> (a)    No governmental authority, or agent of a governmental
> authority, or person acting on behalf of a governmental authority, shall
> engage in a pattern or practice of conduct by law enforcement officers
> that deprives any person of rights, privileges, or immunities secured or
> protected by the Constitution or laws of the United States or by the
> Constitution or laws of California.
>
> (b)    The Attorney General may bring a civil action in the name of
> the people to obtain appropriate equitable and declaratory relief to
> eliminate the pattern or practice of conduct specified in subdivision
> (a), whenever the Attorney General has reasonable cause to believe
> that a violation of subdivision (a) has occurred.

17   Cal. Civ. Code § 52.3.

18        Defendants do have authority to support their position. *See Garcia v. City of Ceres*, No. CV

19   F 08-1720 LJO SMS, 2009 U.S. Dist. LEXIS 16165, at *30 (E.D. Cal. Mar. 2, 2009) (agreeing with

20   defendants that a "section 52.3 claim is 'strictly for the Attorney General'" and "there is nothing to

21   suggest that . . . section 52.3 provides a private right of action"); *Akhtarshad v. City of Corona*, No.

22   No. EDCV 08-290-VAP (JCRx), 2009 U.S. Dist. LEXIS 10979, at *19 n.4 (C.D. Cal. 2009) (stating

23   that "[t]here is no private right of action to enforce California Civil Code § 52.3" and citing, in

24   support subsection (b) referring to a suit by the Attorney General). On the other hand, Mr. Scocca

25   also has authority to support his position that there is a private right of action. *See, e.g.*, *Cabral v.*

26   *County of Glenn*, 624 F. Supp. 2d 1184, 1193 (E.D. Cal. 2009) (concluding that plaintiff adequately

27   stated a claim for relief under § 52.3 because he alleged "a pattern or practice of conduct by which

28   officers use tasers on jailed individuals"); *Ley v. State of Cal.*, 114 Cal. App. 4th 1297, 1306-07

United States District Court

For the Northern District of California

1   (2004) (upholding grant of summary judgment to defendants on § 52.3 claim because the state and

2   county did not engage in a pattern or practice of conduct).

3        In their papers, Defendants fairly criticize the cases on which Mr. Scocca relies – *e.g.*,

4   neither court was called upon to decide the specific issue of whether there was a private right of

5   action under § 52.3.  But the authority on which Defendants rely is also problematic in that the

6   analysis is fairly cursory.

7        On balance, the Court finds Defendants' position to be the stronger one.  Ever since the

8   California Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Insurance Co.*, 46 Cal. 3d

9   287 (1988), the California courts have generally held that whether a private right of action exists

10  under California law is primarily a question of legislative intent.  *See, e.g.*, *Animal Legal Defense*

11  *Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008) (noting that the question of whether a statute

12  creates a private right of action is "primarily [an issue] of legislative intent"); *Thornburg v. El*

13  *Centro Regional Med. Ctr.*, 143 Cal. App. 4th 198, 204 (2006) (stating that "'[t]he question of

14  whether a regulatory statute creates a private right of action depends on legislative intent'");

15  *Farmers Ins. Exchange v. Superior Court*, 137 Cal. App. 4th 842, 850 (2006) (noting that, since

16  *Moradi-Shalal*, state "Courts of Appeal have held that a statute creates a private right of action only

17  if the statutory language or legislative history affirmatively indicates such an intent").  The

18  California Supreme Court has instructed that "legislative intent, if any, is revealed through the

19  language of the statute and its legislative history."  *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th

20  592, 596 (2010); *see also Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist.*, 9 Cal.

21  App. 4th 644, 658 (1992) (stating that "courts are not at liberty to impute a particular intention to the

22  Legislature when nothing in the language of the statute implies such an intention").

23       A court must first examine the language of a statute for evidence of an intent to create a

24  private cause of action.  If "a statute does not contain . . . obvious language [*i.e.*, either stating in

25  clear, understandable, and unmistakable terms an intent to create a private cause of action or

26  referring to a remedy or means of enforcing substantive provisions], resort to its legislative history is

27  next in order."  *Lu*, 50 Cal. 4th at 597.  Where there is no expression of legislative intent, "there is

28  no private right of action, with the possible exception that compelling reasons of public policy might

**United States District Court**
For the Northern District of California

1  require judicial recognition of such a right." *Animal Legal Defense Fund*, 160 Cal. App. 4th at 142;

2  *see also County of San Diego v. State of California*, 164 Cal. App. 4th 580, 609 (2008).  This is

3  because, "[i]f the Legislature simply did not consider the possibility of creating a new private right

4  to sue, then the Legislature cannot have had an intent to create a new private right to sue." *Crusader*

5  *Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 127 (1997).

6      In the instant case, there is clearly no "obvious language" in § 52.3 of an intent to create a

7  private right of action.  The statute refers only to an action by the Attorney General.  As for the

8  legislative history, Mr. Scocca has not pointed to anything that would suggest an intent to create a

9  private right of action, and there is nothing in the case law at least that discusses the legislative

10  history behind the statute.  Absent a basis in text or legislative intent to confer a private right of

11  action, the Court concludes Mr. Scocca has failed to establish such a right under § 52.3.

12      Accordingly, the Court grants the motion to dismiss the § 52.3 claim, and with prejudice.

13  **III.**   **CONCLUSION**

14      For the foregoing reasons, the Court grants Defendants' motion to dismiss.  The claims for

15  violation of equal protection under California law and for violation of § 52.3 are dismissed with

16  prejudice.  The claim for violation of equal protection under federal law is dismissed without

17  prejudice.  Mr. Scocca has leave to amend the federal equal protection claim within thirty days of

18  the date of this order.  To do so, Mr. Scocca must meet the substantial burden test.  MS and CGF

19  may also plead a federal equal protection claim but, in order to do so, must include allegations

20  establishing either direct or associational standing.

21      This order disposes of Docket No. 9.

22

23      IT IS SO ORDERED.

24

25  Dated: June 22, 2012

26  _____

27  EDWARD M. CHEN
    United States District Judge

28