LORI E. PEGG, Acting County Counsel (S.B. #129073)
MELISSA R. KINIYALOCTS, Deputy County Counsel (S.B. #215814)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
SHERIFF LAURIE SMITH and
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco)

| | |
|---|---|
| TOM SCOCCA, MADISON SOCIETY, INC., and THE CALGUNS FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SHERIFF LAURIE SMITH (In her individual and official capacity.), COUNTY OF SANTA CLARA, and DOES 1 to 20, <br><br> Defendants. | No. CV11-01318 EMC <br><br> **DEFENDANTS' SUPPLEMENTAL BRIEF** |

## I.

## INTRODUCTION

On November 15, 2012, the Court heard oral argument on Defendants' motion to dismiss the First Amended Complaint. During the hearing, the Court ordered the parties to submit supplemental briefs on the issue of whether the Sheriff is entitled to immunity under the Eleventh Amendment, and to analyze the issue with regard to cases that have held that California District Attorneys are state actors.

In *Pitts v. County of Kern*, 17 Cal. 4th 340, 353-62 (1998), the California Supreme Court held that district attorneys are state officials for purposes of liability under 42 U.S.C. § 1983 while acting in their prosecutorial capacity. The Ninth Circuit reached the same conclusion in *Weiner v. San Diego County*, 210 F.3d 1025, 1028-29 (9th Cir. 2000). Both *Pitts* and *Weiner* examined

1

1 California constitutional and statutory law in reaching this conclusion. Applying the same rational
2 as in *Pitts* and *Weiner*, the California Supreme Court held in *Venegas v. County of Los Angeles*, 32
3 Cal.4th 820, 839 (2004), that sheriffs act as state officials while performing law enforcement duties.

4       In *Brewster v. Shasta County*, 275 F.3d 803, 809 (9th Cir. 2001), however, the Ninth Circuit
5 held that sheriffs act on behalf of the county, not the state, when investigating crimes. Similarly, in
6 its now vacated opinion in *Bishop Paiute Tribe v. County of Inyo* 291 F.3d 549 (9th Cir.2002), the
7 Ninth Circuit concluded that both the district attorney and its sheriff were acting as county officials
8 in obtaining and executing an invalid search warrant aimed at uncovering welfare fraud.
9 Significantly, *Venegas* was decided three years after *Brewster*, and this Court should follow *Venegas*
10 and not Brewster because the California Supreme Court's interpretation of California law is binding
11 on this Court.

12       Further, when deciding whether to grant or deny an application for a license to carry a
13 concealed weapon, the Sheriff acts as a state, not a county, official. The California Attorney General
14 has direct supervision over the Sheriff in all matters pertaining to her duties and has oversight over
15 the application process, including approving a standard application, maintaining fingerprints, setting
16 a fee for such applications, and determining whether applicants are prohibited by state or federal law
17 from possessing, receiving, owning, or purchasing a firearm. Accordingly, the Sheriff is entitled to
18 Eleventh Amendment immunity.

## II.

### CALIFORNIA COURTS AND THE NINTH CIRCUIT HAVE CONCLUDED THAT DISTRICT ATTORNEYS ARE STATE ACTORS WHEN INVESTIGATING AND PROSECUTING CRIMES

22       Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts
23 committed by its officials in accordance municipal policy, practice, or custom. *Monell v.*
24 *Department of Social Servs.*, 436 U.S. 658, 690-91 (1978). To hold a local government liable for an
25 official's conduct, a plaintiff must first establish that the official: (1) had final policymaking
26 authority "concerning the action alleged to have caused the particular constitutional or statutory
27 violation at issue;" and (2) was the policymaker for the local governing body for the purposes of the
28 particular act. *McMillian v. Monroe County Alabama*, 520 U.S. 781, 785 (1997) (noting that an

official can be the policymaker for the state for one type of act and the policymaker for the local government for another type of act).

In *McMillian*, the Court held that an official's function must be evaluated to determine whether he or she acts for the state or the county. *McMillian*, 520 U.S. at 785. The Court reviewed Alabama's constitution, statutes, and case law to determine whether a county sheriff was a state or county official for purposes of Section 1983 liability. *Id.* at 787-93. The Court found it significant that Alabama amended its constitution to list county sheriffs as executive officers who could be impeached by the State Supreme Court upon the order of the governor, which was the same procedure used for other state officials. *Id.* at 788. Further, the Court stated it was critical that the Alabama Supreme Court had similarly interpreted Alabama's constitution as prohibiting county liability predicated upon the doctrine of respondeat superior. *Id.* at 789.

The *McMillian* Court also focused on the fact that sheriffs in Alabama were given complete authority to enforce state criminal laws in the county and that county commissions could not instruct them in these duties. *McMillian*, 520 U.S. at 789. The Court determined that, under Alabama law, a county sheriff was a state official when carrying out his law enforcement duties even though the county paid his salary and provided his equipment, the county's citizens elected him, the Alabama code listed him as a county official, and his jurisdiction was limited to the county's borders. *Id.* at 791-93.

In *Pitts v. County of Kern*, 17 Cal.4th 340, 353-62 (1998), the California Supreme Court, following *McMillian*, analyzed California law and held that a district attorney was a state official for purposes of Section 1983 liability while acting in his prosecutorial capacity. *Id.* at 928-34. And in *Weiner v. San Diego County*, 210 F.3d 1025, 1028-29 (9th Cir. 2000), the Ninth Circuit analyzed California law to reach the same conclusion.

The *Pitts* and *Weiner* courts looked to Article XI, section 1(b) of California's constitution, which states that the state legislature "shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county." Article V, section 13 of California's constitution states that the Attorney General has

> direct supervision over every district attorney . . . in all matters pertaining to the duties of the respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions . . . Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office.

The *Pitts* and *Weiner* courts noted that there are California statutes that weigh both in favor of and against concluding that a district attorney is a state officer. *Pitts*, 17 Cal.4th at 357-60; *Weiner*, 210 F.3d at 1029. Provisions that support the conclusion that district attorneys are state officers provide that: (1) all suits are to be conducted under the name of the state of California (Cal. Govt. Code § 100(b)); (2) any county authority to review a district attorney's conduct "shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not . . . obstruct the investigative and prosecutorial function of the district attorney of a county" (Cal. Govt. Code § 25303); (3) the "Attorney General has direct supervision over the district attorneys of the several counties of the State and may require of them written reports as to the condition of public business entrusted in their charge" and may assist the district attorney or take full charge of any investigation or prosecution (Cal. Govt. Code § 12550); and (4) the Attorney General can "call into conference the district attorneys . . . for the purpose of discussing the duties of their office[ ], with the view of uniform and adequate enforcement of' state laws (Cal. Govt. Code § 12524).

The *Pitts* and *Weiner* courts noted that on the other hand there are California statutory provisions that weigh in favor of concluding that district attorneys are county officers: (1) district attorneys are elected by the county voters (Cal. Const., art. XI, § 1); (2) district attorneys are listed as county officers (Cal. Govt. Code § 24000(a)); (3) counties set district attorneys' salaries (Cal. Govt. Code § 25300); (4) district attorneys must be registered to vote in their respective counties (Cal. Govt. Code § 24001); (5) counties supervise the district attorneys' conduct and use of public funds (Cal. Govt. Code § 25303); and (6) district attorneys can be removed from office following the same

4

procedures as applied to district, county, and city officers, i.e., a grand jury submitting a written accusation to the state court (Cal. Govt. Code §§ 3060 and 3073). *Pitts*, 17 Cal.4th at 361; *Weiner*, 210 F.3d at 1029-1030.

After balancing these constitutional and statutory provisions, the *Pitts* and *Weiner* courts concluded that under California law a county district attorney acts as a state official when deciding whether to prosecute an individual. *Pitts*, 17 Cal.4th at 362; *Weiner*, 210 F.3d at 1030. The fact that California statutory law lists district attorneys as county officers was not dispositive because, as discussed in *McMillian*, the function of the district attorney, including who can control the district attorney's conduct, is the issue. *Id.*; see *McMillian*, 520 U.S. at 792 n.7 (giving little weight to fact that the Alabama code listed sheriffs as county officers because the state court had held that the constitution made sheriffs executive officers). Further, the *Weiner* court noted that the *McMillian* Court acknowledged the relevance of the requirements that sheriffs be elected locally and live and vote in the county, but found that these factors were not controlling. *Weiner*, 210 F.3d at 1030; see *McMillian*, 520 U.S. at 791-92. Moreover, the *Weiner* court held that while California statutory law gives a county some authority to oversee a district attorney's conduct, it expressly excludes conduct related to the investigation and prosecution of crimes, giving that authority instead to the Attorney General. *Weiner*, 210 F.3d at 1030; see Cal. Govt. Code §§ 26303 and 12550. The *Weiner* court concluded that "the only significant differences between California law applicable in this case and Alabama law applicable in *McMillian* are that under California law the county sets the district attorney's salary and the district attorney can be removed from office in a fashion similar to other county employees. These differences are not sufficient to produce a result in this case different from the result in *McMillian*." *Id.*

With regard to a California county's ability to set a district attorney's salary, the *Weiner* court looked to *Pitts*, which held that this " 'does not translate into control over him . . . .'" *Weiner*, 210 F.3d at 1030 (quoting *Pitts*, 70 Cal.Rptr.2d 823). In addition, the *Weiner* court observed that although California Government Code section 25303 authorizes a county through its Board of Supervisors to "supervise the district attorney's official conduct and in particular his or her use of public funds," that section precludes a county from obstructing "the investigative and prosecutorial

function of the district attorney of a county." *Id.* (quoting Cal. Govt. Code § 25303).

With regard to the fact that district attorneys in California can be removed from office in the same fashion as other county officers, the *Weiner* court held that "this does not mean they are within the control of the county. The removal process authorizes a county grand jury to vote to remove a district attorney from office, but requires the appointment by the state court of a prosecutor to 'conduct the proceedings.'" *Weiner*, 210 F.3d at 1030 (quoting Cal. Govt. Code § 3073).

### III.

### The California Supreme Court held in *Venegas* that Sheriffs are agents of the state when acting in their law enforcement roles

In *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 839 (2004), the California Supreme Court held that in California sheriffs "act as state officers while performing state law enforcement duties." The *Venegas* court examined a state appellate decision, *Peters*, which applied the *McMillian/Pitts* analysis to conclude that California sheriffs act as state officers in setting policies governing release of prisoners from the county jail. *Id.* at 833 (citing *County of Los Angeles v. Superior Court (Peters)*, 68 Cal. App. 4th 1166, 1174–75). Both *Venegas* and *Peters* noted that the same constitutional and statutory provisions governing district attorneys considered in *Pitts* also apply to sheriffs. *Venegas*, 32 Cal.4th at 833; *Peters*, 68 Cal.App.4th at 1174.

For example, Article V, section 13 of the California Constitution provides that subject to the powers and duties of the Governor, "[t]he Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as the Attorney General may seem advisable."

Similarly, Government Code section 12560, which relates to sheriffs, is substantially identical to Government Code section 12550, which relates to district attorneys and was relied on in *Pitts*. *Venegas*, 32 Cal.4th at 834. Section 12560 gives the Attorney General "direct supervision" of all sheriffs, with power to order reports "concerning the investigation, detection and punishment of crime in their respective jurisdictions," and to direct their activities regarding these investigations.

The *Venegas* court also cited Government Code sections 26600 (sheriffs' duty to preserve the peace through crime prevention projects); 26601 (sheriffs' authority to arrest criminal offenders), and 26602 (sheriffs' duty to prevent breaches of peace and investigate public offenses).

In addition, as in *Pitts* with respect to district attorneys, the county board of supervisors has no direct control over a sheriff's performance of `law enforcement functions. *Venegas*, 32 Cal.4th at 834. Government Code section 25303, upon which *Pitts* relied for this proposition, applies to both offices. *Id.* Among other things, that section reaffirms

> the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county. [¶] Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff.

*Venegas*, 32 Cal.4th at 834 (quoting Cal. Govt. Code, § 25303).

As in *Pitts*, *Peters* acknowledged that other constitutional and statutory provisions tended to support a theory of county agency. For example, article XI, sections 1, subdivision (b), and 4, subdivision (c), of the California Constitution provide for "an elected sheriff" in each county, and Government Code section 24000 includes sheriffs within the general category of county officers. But as in *Pitts*, *Peters* concluded that these provisions were outweighed by those supporting the argument that sheriffs are not policy makers for the county board of supervisors but are functionally independent of county control when performing their law enforcement functions. *Peters*, 68 Cal.App.4th at 1176–77.

Thus, after analyzing state constitutional and statutory provisions and the analysis of the appellate court in *Peters*, the California Suprem`e Court held in *Venegas* that California Sheriffs act on behalf of the state when performing law enforcement activities, and, as state agents, are absolutely immune from prosecution for asserted civil rights violations in actions under 42 U.S.C. § 1983. *Venegas*, 32 Cal.4th at 835.

/ /

/ /

Defendants' Supplemental Brief    CV11-01318 EMC

## IV.

**Two Ninth Circuit cases, *Brewster* and *Bishop*, have effectively been overruled in *Venegas* by the California Supreme Court, which is the ultimate interpreter of California state law**

The Ninth Circuit held in *Brewster v. Shasta County*, 275 F. 3d 803, 809 (9th Cir. 2001) – which was decided three years before the California Supreme Court's decision in *Venegas* – that a sheriff acts for the county, not the state, when investigating crimes. The court concentrated on such factors as (1) inclusion of sheriffs as county officers in state Constitution Article XI, section 1, subdivision (b), and Government Code section 24000; and (2) county supervision of sheriffs' activities under Government Code section 25303. *Brewster*, 275 F.3d at 806–808. The *Venegas* court rejected *Brewster*'s analysis, noting that *Pitts* and *Peters* found these factors insufficient to establish a county agency relationship. *Venegas*, 32 Cal.4th at 835 (citing *Pitts*, 17 Cal.4th at 360–362 and *Peters* 68 Cal.App.4th at 1176).

*Brewster* also deemed significant the fact that monetary damages assessed against sheriffs for Section 1983 claims would be paid by the counties, not the state. *Brewster*, 275 F.3d at 808 (citing Cal. Govt. Code § 815.2(a) [vicarious liability of government agencies for employee's torts]). The *Venegas* court rejected this analysis, noting that California Government Code section 815.2(a) applies to both the state and counties, and although it may provide a general basis for vicarious public liability, subdivision (b) of the section immunizes both the state and county from torts that are committed by employees who are themselves immune. *Venegas*, 32 Cal.4th at 835.

The *Venegas* court determined that the *Brewster* analysis was faulty for other reasons. As *Brewster* earlier acknowledged, if sheriffs indeed are acting as state agents in crime investigations, they would be immune from liability under Section 1983 if sued in their official capacity, and their counties would not be liable for their actions. *Venegas*, 32 Cal.4th at 836 (citing *Brewster*, 275 F.3d at 805 ["if [the sheriff] is a policy maker for the state, then the county cannot be liable for his actions"]). But even assuming California sheriffs lack such immunity, the fact that counties may be called on to pay any tort damage judgment rendered against sheriffs sued in their personal capacity is only one of the many factors *McMillian* requires courts to consider. *Venegas*, 32 Cal.4th at 836. The *Venegas* court held that "[t]hat single factor, if it truly exists, is outweighed by the constitutional and

8

statutory provisions discussed above, demonstrating that a sheriff represents the state, not the county, when performing law enforcement duties in his official capacity." *Id.*

In *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549, 553 (9th Cir. 2002) vacated *sub nom. Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003),[1] a Native American tribe and its wholly owned gaming corporation sued the County of Inyo, its district attorney, and its sheriff, seeking equitable and monetary relief and alleging these defendants conducted an unlawful records search on tribal property. In its now vacated opinion in *Bishop*, the Ninth Circuit concluded that both the district attorney and sheriff were acting as county officers in obtaining and executing an invalid search warrant aimed at uncovering welfare fraud. *Bishop*, 291 F.3d at 562–566. As in *Brewster*, the *Bishop* court relied on such factors as (1) inclusion of district attorneys and sheriffs as county officers in state Constitution article XI, section 1, subdivision (b), and Government Code section 24000; and (2) county supervision of the district attorney's and sheriff's activities under Government Code section 25303. Bishop, 291 F.3d at 563–564.

Acknowledging the constitutional and statutory supervisory authority of the state Attorney General over district attorneys and sheriffs in their law enforcement functions, the *Bishop* court nonetheless expressed concern that "to allow the Attorney General's supervisory role to be dispositive . . . would prove too much," for "if taken to its logical extreme, all local law enforcement agencies in California would be immune from prosecution for civil rights violation," contrary to *Monell's* holding preserving section 1983 actions against local agencies. *Bishop*, 291 F.3d at p. 564.

*Venegas* rejected this analysis:

> To the contrary, merely because the sheriff is a state officer . . . does not mean that all local law enforcement officers are also to be deemed state officers. *Pitts* and *Peters* are clearly confined, respectively, to situations in which district attorneys and sheriffs are actually engaged in performing law enforcement duties, such as investigating and prosecuting crime, or training staff and developing policy involving such matters. Immunizing these persons when actually engaged in such activities would not violate *Monell's* broad refusal to find all local agencies immune from suit under section 1983. . . . Moreover,

---

[1] The United States Supreme Court held that tribe was not a "person" who could sue under Section 1983.

> *Bishop's* analysis appears to express a policy concern (overly broad immunity from suit) that is extraneous to the high court's factor-balancing test employed in *McMillian*, a test that, as *Brewster* acknowledged, requires a weighing of the state's Constitution, statutes, and case law.

*Venegas*, 32 Cal. 4th at 837-38.

Interpretation of state law by a state's highest court is binding on federal courts. *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). Thus, *Venegas*'s conclusion that sheriffs act as state officers in performing their law enforcement activities is binding on this Court.

## V.

**The Sheriff acts as a state official when exercising her discretion to grant or deny applications for licenses to carry concealed weapons**

The California Attorney General has direct supervision over Sheriff Laurie Smith in all matters pertaining to her duties, including her exercise of discretion in granting or denying applications for licenses to carry concealed weapons. The California Attorney General approves a standard application for such licenses that must be used throughout the state, and applicants cannot be required to complete any additional forms. Cal. Pen. Code § 26175(a)(1) and (g). The fingerprints of each applicant must be taken on forms prescribed by the Department of Justice, which must be forwarded to the department. Cal. Pen. Code § 26185(a)(1). The Department of Justice also prescribes a fee that applicants must pay when submitting an application. Cal. Pen. Code § 26190(a)(1). Moreover, a license to carry a concealed weapon may not be issued if the Department of Justice determines that the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. Cal. Pen. Code § 26195(a).

In contrast, the County Board of Supervisors has no control over the Sheriff's exercise of discretion in granting or denying applications for licenses to carry concealed weapons. The County Board of Supervisions has no authority to alter the application form approved by the California Attorney General. The County Board of Supervisors has no oversight of fingerprints taken of each applicant and is not responsible for maintaining fingerprints. Further, the County Board of Supervisors cannot set a fee that applicants must pay when submitting an application.

/ /

Thus, the Sheriff acts as a state official when exercising her discretion to grant or deny applications for licenses to carry concealed weapons. As such, she is immune from liability under 42 U.S.C. § 1983 by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.

Dated:   November 21, 2012

Respectfully submitted,

LORI E. PEGG
ACTING COUNTY COUNSEL

By:   /S/
MELISSA R. KINIYALOCTS
Deputy County Counsel

Attorneys for Defendants
SHERIFF LAURIE SMITH
and COUNTY OF SANTA CLARA

670810.DOC